786 P.2d 967

**In the Matter of the Application of Margaret L. MACARTNEY and Roger M. Sherman, to be Admitted as a Member of the State Bar of the State of Arizona.**

**No. SB–89–0057–PR.**

Supreme Court of Arizona.

Jan. 30, 1990.

Margaret L. Macartney, Reno, pro se.

Roger M. Sherman, Chandler, pro se.

Jensen & Irwin by Jay R. Irwin, Yuma, for Committee on Character and Fitness.

FELDMAN, Vice Chief Justice.

Margaret L. Macartney and Roger M. Sherman (petitioners) applied to take the Arizona bar examination. They petition this court to waive the provisions of Rule 34(c)(1)(D), Ariz.R.Sup.Ct., 17A A.R.S. (hereafter Rule ____). Grant of the petition would allow petitioners to sit for the examination, even though they did not graduate from a law school accredited by the American Bar Association (ABA), as required by Rule 34. We have authority to waive this requirement pursuant to Rule 36(f).

The court denied the petition by order of October 13, 1989. Petitioners moved for reconsideration, arguing that applying the rule to them would violate the precept that the state bar admission requirements "must have a rational connection with the applicant's fitness or capacity to practice law," quoting *Schware v. Board of Bar Examiners of State of New Mexico*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957).

Petitioners graduated from the Nevada School of Law Old College (Old College) in Reno, Nevada, a non-ABA accredited school. They contend that denying them the privilege of sitting for the Arizona bar based on failure to graduate from an accredited school is "a mere talismanic incantation" because this court has already allowed graduates of foreign law schools to sit for the Arizona bar. *See In re Schlittner*, 146 Ariz. 198, 704 P.2d 1343 (1985) (graduate of University of Wales, an English-speaking university teaching a common law tradition, was permitted to sit for the Arizona bar exam).

As with other candidates who graduated from foreign law schools, Schlittner was allowed to take the Arizona bar because he established, by affidavit from a professor familiar with the University of Wales, that the legal education obtained by graduates of that school was substantially equivalent to that offered by ABA-accredited schools. *Id.* at 200, 704 P.2d at 1345.

Petitioners persuasively argue that they made a much greater showing than Schlittner and other candidates who have obtained a similar waiver. Petitioners support their application with affidavits and letters from faculty members of the school, members of the Nevada judiciary, and members of the Nevada State Bar, all attesting that in their opinion, the education offered by Old College met all standards and requirements for ABA accreditation. Among the affidavits to this effect was one by the school's former dean, Felix F. Stumpf, a distinguished academician who was academic director of the National Judicial College for eleven years and, before that, administrator of California's continuing legal education program.

Petitioners also ask us to note that unlike the candidates from foreign colleges, their courses of study covered all subjects required by the ABA, including the United States Constitution, American civil procedure, American criminal law and procedure, American legal ethics, and similar courses. Most of these, of course, are not taught in foreign schools because they are not germane to the purposes of foreign schools' curricula.

This court has, on occasion, granted waivers to graduates of foreign schools in part because such schools have no method to obtain accreditation nor is there any way for citizens of foreign countries to attend an ABA-accredited school in their own country. *Schlittner,* 146 Ariz. at 200, 704 P.2d at 1345. Petitioners point out that there is no ABA-accredited law school in Nevada, a factor distinguishing Nevada from all but one other state.

Several factors persuade us to reconsider our previous denial of their petition to sit for the Arizona bar examination. The first is the detailed, voluminous, and persuasive documentation of the application, as described earlier in this opinion.

Second, and most important, the Nevada Supreme Court carefully investigated Old College. The court conducted a hearing, took testimony, and considered other evidence. After the members of the court personally toured and inspected the school, the court made findings and conclusions and entered an order for provisional relief and recognition of the graduates of Old College. *See* Nevada Supreme Court Order Granting Conditional Relief to Old College School of Law, dated January 2, 1985. Financial difficulties prevented the school from achieving the provisional accreditation expected by the Nevada court, and eventually led to the school's closure. The court nevertheless held in a formal opinion that although the graduates of the school would be unable to satisfy Nevada's admission requirement of graduation from an ABA-accredited law school, "the record as a whole demonstrates that the education received at the school was substantially similar or functionally equivalent to that provided at an ABA-accredited school." *Bennett v. State Bar of Nevada,* 103 Nev. 519, 746 P.2d 143, 145 (1988). The court granted a petition similar to that filed in the case before us, concluding that any other result would be "to deny admission ... arbitrarily and for a reason unrelated to the essential purpose of the rule." *Id.* (quoting *In re Nort,* 96 Nev. 85, 605 P.2d 627, 635 (1980)).

 Petitioners argue that this court should give full faith and credit to the Nevada court's holding in *Bennett.* We do not believe that the concept of full faith and credit requires us to do so. The effect of the full faith and credit clause is to nationalize the doctrines of *res judicata* and collateral estoppel. *See Fremont Indem. Co. v. Indus. Comm'n,* 144 Ariz. 339, 342, 697 P.2d 1089, 1092 (1985). Arizona's Committee on Character and Fitness was not a party to the Nevada litigation and is not bound by the judgment of the Nevada court; therefore, the full faith and credit

clause may not be invoked. *Id.* at 343, 697 P.2d at 1093.

We recognize, however, the principle that the courts of one jurisdiction should "give effect to the laws and judicial decisions of another state or jurisdiction, not as a matter of obligation, but out of deference and mutual respect." *Brown v. Babbitt Ford, Inc.,* 117 Ariz. 192, 198, 571 P.2d 689, 695 (Ct.App.1977). The doctrine of comity may be applied, at this court's discretion, even where the full faith and credit clause does not apply. *Fremont,* 144 Ariz. at 345, 697 P.2d at 1096.

The court's order and its opinion in *Bennett* are not based on generalized statements, but on detailed findings and conclusions made after thorough investigation and the taking of evidence, as well as the court's personal observations of the quality of education at the school. Nevada's rule requiring accreditation is similar to ours. Therefore, we believe principles of comity require us to give weight to the Nevada court's finding that the education petitioners received at Old College was functionally equivalent to the education they would have received at an ABA-accredited school.

Third, the report issued by the Accreditation Committee for the Section of Legal Education and Admissions of the ABA supports the conclusion that graduates of the school obtained the functional equivalent of an education at an ABA-accredited law school. *Bennett,* 746 P.2d at 145–46.

Fourth, the pass rates of the school's graduates who took the Nevada bar examination exceeded the pass rate of the graduates of twenty-seven other ABA-accredited schools whose graduates sat for the same bar examination. *Id.* at 147. Indeed, we note that the school's pass rate (sixty-nine to seventy percent) on the Nevada bar examination is at least equal to the pass rate of graduates of ABA-accredited schools taking the Arizona examination.

Finally, we note that both petitioners passed the Nevada bar examination and are admitted to practice in Nevada, and that Macartney passed the California bar examination and is admitted to practice in that state.

The rule of law applied to the factors listed is that the "practice of law is not a privilege; it is a right. While similar to the right to engage in other occupations, it is subject to regulation to ensure that those who engage in the practice of law have the necessary mental, physical, and moral qualities required." *In re Ronwin,* 139 Ariz. 576, 579, 680 P.2d 107, 110, *cert. denied,* 464 U.S. 977, 104 S.Ct. 413, 78 L.Ed.2d 351 (1983); *see also In re Klahr,* 102 Ariz. 529, 531, 433 P.2d 977, 979 (1967). This court, through its committees, has the obligation to see that those who are admitted to practice have the necessary qualifications. *In re Levine,* 97 Ariz. 88, 90, 397 P.2d 205, 207 (1964). We have neither the constitutional authority nor the moral right to establish rules that are not rationally connected with an applicant's capacity to practice.

Given the circumstances of this case, and in light of the waivers previously granted to others who made far less of a showing, we conclude that there is no rational basis to deny petitioners permission to take the Arizona bar examination. In reaching this conclusion, we do not repeal the requirements of Rule 34(c)(1)(D), nor do we intend to "open the gates" to graduates of all unaccredited law schools. We set out the circumstances of this case in some detail to illustrate that petitioners carried a very heavy burden. We also alluded specifically to the respect and deference we give to the findings and conclusions of the Nevada Supreme Court. We do not propose in the future to undertake any personal examination, investigation, or inspection of unaccredited law schools to determine the quality of education that may be obtained at such schools. This court is not equipped or trained to engage in an accreditation process, nor does it or the State Bar of Arizona have the wherewithal to undertake such a project. Were it not for the findings of the Nevada Supreme Court, documented as they were by that court, we would not grant this petition.

The motion for reconsideration is granted. The petition for waiver of Rule

34(c)(1)(D) is granted. Petitioners may take the Arizona bar examination, provided they meet all other requirements that apply to applicants in general. If they pass that examination and meet all other requirements for those who pass, they will be admitted to the Arizona bar.

GORDON, C.J., and MOELLER, J., concur.

CORCORAN, Justice, dissenting:

This court requires that an applicant for admission to the Bar be "a graduate of a law school provisionally or fully approved by the American Bar Association at the time of his graduation." However, an applicant for admission may also take the bar examination if the applicant has been actively engaged in the practice of law in another state for at least 5 of the last 7 years. Rule 34(c)(1)(D), Rules of the Supreme Court. Neither petitioner is a graduate of an accredited law school and neither seeks admission under the active practice exception. Petitioners take no issue with the validity of rule 34(c)(1)(D), or with this court's authority to impose such a requirement.

Since this court requires ABA-accreditation of a law school before its graduates may sit for the Arizona Bar, this court should not set up an alternative accreditation process applicable either to individual applicants or particular non-ABA-accredited schools.

Petitioners should not be given permission to sit for the Arizona bar examination.

CAMERON, J., concurs.